ATTORNEY FOR PETITIONER:
**MELISSA G. MICHIE**
TAX CONSULTANTS, INC.
Columbus, IN

ATTORNEYS FOR RESPONDENT:
**MARILYN S. MEIGHEN**
ATTORNEY AT LAW
Carmel, IN

**BRIAN A. CUSIMANO**
ATTORNEY AT LAW
Indianapolis, IN



FILED

Dec 06 2023, 1:13 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# INDIANA TAX COURT

| | |
|---|---|
| CAMELOT COMPANY, LLC, )<br><br>Petitioner, )<br><br>v. )<br><br>BARTHOLOMEW COUNTY ASSESSOR, )<br><br>Respondent. ) | Cause No. 21T-TA-00011 |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**December 6, 2023**

ROBB, Senior J.

Camelot Company, LLC challenges the Indiana Board of Tax Review's final determination that found its property tax appeal for the 2018 tax year was not timely filed. While the Court reverses that discrete finding, it nonetheless affirms the Indiana Board's ultimate conclusion that Camelot is not entitled to a change in its 2018 land assessment.

**FACTS AND PROCEDURAL HISTORY**

Camelot owns a convenience store and gas station, and the 44,627 square feet of land upon which they are located, in Columbus, Indiana. (*See* Cert. Admin. R. at 23.) For the 2017 assessment year, Camelot's land was assigned a value of $803,300. (*See* Cert. Admin. R. at 23.)

In February of 2018, the Bartholomew County Property Tax Assessment Board of Appeals ("PTABOA") conducted a meeting where, along with other items of business, it voted to approve the 2018 Bartholomew County land order. (*See* Cert. Admin. R. at 15.) That land order, among other things, changed the classification assigned to Camelot's land and increased its base rate value from $18 per square foot to $19 per square foot. (*See, e.g.*, Cert. Admin. R. at 21, 23, 25, 65.) Consequently, on June 15, 2018, the Assessor mailed to Camelot a Form 11 Notice of Assessment indicating that effective with the January 1, 2018, assessment date, the value of Camelot's land had increased to $847,900. (*See* Cert. Admin. R. at 23, 65.)

On September 3, 2019, Camelot filed an appeal seeking to correct "[a] clerical, mathematical, or typographical mistake." (*See* Cert. Admin. R. at 3-4.) More specifically, Camelot alleged that its land was valued using the wrong land order:

> The land order increasing the subject [property's] primary land base rate to $19 per sq. ft. was not approved by [the] PTABOA until February 6, 2018 and this assessment is as of January 1, 2018, therefore the [property's] primary land base rate of $19 per sq. ft. is in error. The 2018 primary land base rate [should be] $18.

(Cert. Admin. R. at 4.) The PTABOA conducted a hearing on the appeal and denied Camelot's request for relief. (*See* Cert. Admin. R. at 5-7, 19.)

Camelot sought review of the PTABOA's decision with the Indiana Board,

2

electing to have its appeal heard as a small claims case. (*See, e.g.*, Cert. Admin. R. at 1-2.) On November 10, 2020, the Indiana Board conducted a hearing on Camelot's appeal. (Cert. Admin. R. at 84.) During that hearing, Camelot again argued that because the new land order had not been approved until February of 2018, the base rates set forth therein could not be used to value its land as of the January 1, 2018, assessment date. (*See, e.g.*, Cert. Admin. R. at 86-88, 94, 96-98.) This time, however, Camelot suggested that its land value for the 2018 tax year should be $8.00 per square foot – the value purportedly indicated under Bartholomew County's 2011 land order. (*See, e.g.*, Cert. Admin. R. at 2, 86-88, 94, 96-98.)

In response, the Assessor asserted that Camelot was not entitled to any relief because its appeal was untimely: the "error" it was complaining about, *i.e.,* whether the correct land order (and thus the correct base rate) was used to value its land involved a subjective issue, not an objective one and, as a result, the appeal had to be filed within 45 days of the Form 11 Notice. (*See* Cert. Admin. R. at 86, 89-91.) Alternatively, the Assessor argued, it was appropriate for her to use the land order that was approved in February of 2018 to value Camelot's land as of January 1, 2018. (*See* Cert. Admin. R. at 89-91.)

On February 5, 2021, the Indiana Board issued a final determination in the matter. In it, the Indiana Board explained that under Indiana Code § 6-1.1-15-1.1, taxpayers like Camelot were subject to different filing deadlines for different types of appeals: appeals challenging the assessed value of property were to be filed (generally) within 45 days of notice of the assessment whereas appeals challenging clerical, mathematical, or typographical errors could be filed anytime within three years

3

after the taxes on the property were first due. (*See* Cert. Admin. R. at 82 ¶ 15.) The Indiana Board found that Camelot's appeal was untimely filed because even though it "checked the box . . . to indicate it was alleging a clerical, mathematical, or typographical mistake," it was actually challenging the assessed value of its property. (Cert. Admin. R. at 82 ¶¶ 16-17 (explaining that "simply calling something a clerical, mathematical, or typographical mistake does not make it so" and therefore Camelot should have filed its appeal within 45 days of the June 15, 2018, issuance of the Assessor's Form 11 notice).) And to the extent it was challenging the assessed value of its property, the Indiana Board continued,

> Camelot did not meet its burden[ of proof]. Its evidence focused solely on an irrelevant question: whether the Assessor could apply base rates that the PTABOA did not approve until February 6, 2018[,] to assess Camelot's property [as of] January 1, 2018. A taxpayer challenging the assessed value of its property generally cannot meet its burden by simply contesting the methodology used to compute the assessment. Instead, it must offer evidence that complies with generally accepted appraisal principles to show the property's market value-in-use. It therefore does not matter which base rates the Assessor used in computing Camelot's assessment. Camelot needed to offer individualized market-based evidence to its property's actual market value-in-use. Because Camelot did not even try to do so, it failed to make a *prima facie* case for changing the assessment.

(Cert. Admin. R. at 82-83 ¶ 19 (internal citation omitted) (emphasis added).) As a result, the Indiana Board ordered "no change" to Camelot's 2018 land assessment of $847,900. (Cert. Admin. R. at 83 ¶ 20.)

Camelot initiated an original tax appeal on March 19, 2021, and after the parties

4

briefing was complete, the Court conducted an oral argument.[1]  Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

The party seeking to reverse an Indiana Board final determination bears the burden of demonstrating its invalidity.  *Hatke v. Potter*, 173 N.E.3d 728, 729 (Ind. Tax Ct. 2021).  Thus, to prevail in its appeal, Camelot must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence.  *See* IND. CODE § 33-26-6-6(e)(1)-(5) (2023).

## LAW

### Deadlines for Filing an Appeal

When Camelot filed its appeal with the PTABOA in 2019, Indiana Code § 6-1.1-15-1.1(a) provided that a taxpayer could initiate a real property assessment appeal by filing a written notice, on a form designated by the Department of Local Government Finance ("DLGF"), with the appropriate township or county assessor.  *See* IND. CODE § 6-1.1-15-1.1(a) (2019).  (*See also* Cert. Admin. R. at 3-4 (Camelot's "Notice to Initiate An Appeal" ("Form 130")).)  The appeal could raise any claim of error related to:

(1) The assessed value of the property[;]

---

[1]  On May 10, 2021, upon the parties' joint motion, the Court ordered the following three other cases to be consolidated with Camelot's:  *Coutar Remainder III, LLC v. Bartholomew Cnty. Assessor*, Cause No. 21T-TA-00009; *Centra Credit Union v. Bartholomew Cnty. Assessor*, Cause No. 21T-TA-00010; and *Piotrowski BK #6253, LLC v. Bartholomew Cnty. Assessor*, Cause No. 21T-TA-000012.  All four cases involve the same issues and present no material factual differences.

5

(2) The assessment was against the wrong person[;]

(3) The approval, denial, or omission of a deduction, credit, exemption, abatement, or tax cap[;]

(4) A clerical, mathematical, or typographical mistake[;]

(5) The description of the real property[; and]

(6) The legality or constitutionality of a property tax or assessment.

I.C. § 6-1.1-15-1.1(a)(1)-(6).[2]

The taxpayer's deadline for filing its appeal depended on the type of error it raised. Indeed, Indiana Code § 6-1.1-15-1.1 provided that if the taxpayer appealed an assessment made before January 1, 2019, on the basis that there was an error in the assessed value of the property, the appeal was to be filed any time after the assessing official's action, but not later than the earlier of:

(A) forty-five (45) days after the date on which the notice of assessment is mailed by the county; or

(B) forty-five (45) days after the date on which the tax statement is mailed by the county treasurer, regardless of whether the assessing official changes the taxpayer's assessment.

I.C. § 6-1.1-15-1.1(b)(1). "If, however, the taxpayer appealed his assessment based on one or more of the *objective* errors listed under Indiana Code § 6-1.1-15-1.1(a)(2)-(6), the appeal must be filed not later than three years after the taxes were first due."

*Bushmann, LLC v. Bartholomew Cnty. Assessor*, 187 N.E.3d 355, 357 (Ind. Tax Ct. 2022).

---

[2] The statute provides certain exceptions to this rule. *See* IND. CODE § 6-1.1-15-1.1(e), (h) (2019). None of those exceptions, however, apply in this case.

6

<u>Valuing Land</u>

For purposes of collecting ad valorem property taxes, Indiana real property is assessed and valued annually. *See* IND. CODE §§ 6-1.1-1-2, -2-1.5(a)(2) (2018). Indiana's annual assessment date is January 1st.[3]  I.C. § 6-1.1-2-1.5(a)(2).

The values, or rates, that are to be used in assessing land within each county's townships are set forth in what is commonly known as a "land order." *See, e.g.*, REAL PROPERTY ASSESSMENT GUIDELINES FOR 2011 ("Guidelines") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2(c) (2011) (amended 2020)), Ch. 2.  With respect to those rates, Indiana Code § 6-1.1-4-13.6 explains that

> (a) The county assessor shall determine the[m for] all classes of commercial, industrial, and residential land (including farm homesites) in the county using guidelines determined by the [DLGF]. The assessor determining the values of land shall submit the values to the county property tax assessment board of appeals [("ptaboa")] by the dates specified in the county's reassessment plan under [Indiana Code § 6-1.1-4-4.2].

> (b) If the county assessor fails to determine land values under subsection (a) before the deadlines in the county's reassessment plan under [Indiana Code § 6-1.1-4-4.2], the county [ptaboa] shall determine the values. If the county [ptaboa] fails to determine the values before the land values become effective, the department of local government finance shall determine the values.

IND. CODE § 6-1.1-4-13.6 (2018).  As referenced in this statute, each county is statutorily required to prepare and implement a reassessment plan.  A reassessment plan, which outlines a county's timeline for assessing all the parcels within its jurisdiction during

---

[3]  Prior to 2016, Indiana's annual assessment date was March 1st.  *See* IND. CODE § 6-1.1-2-1.5(a)(1) (2018).

every four-year reassessment cycle, is governed by Indiana Code § 6-1.1-4-4.2:

(a) The county assessor of each county shall, before July 1, 2013, and before May 1 of every fourth year thereafter, prepare and submit to the [DLGF] a reassessment plan for the county. The following apply to a reassessment plan prepared and submitted under this section:

(1) The reassessment plan is subject to approval by the [DLGF]. The [DLGF] shall complete its review and approval of the reassessment plan before:

(A) March 1, 2015; and

(B) January 1 of each subsequent year that follows a year in which the reassessment plan is submitted by the county.

(2) The [DLGF] shall determine the classes of real property to be used for purposes of this section.

(3) Except as provided in subsection (b), the reassessment plan must divide all parcels of real property in the county into four (4) different groups of parcels. Each group of parcels must contain approximately twenty-five percent (25%) of the parcels within each class of real property in the county.
(4) Except as provided in subsection (b), all real property in each group of parcels shall be reassessed under the county's reassessment plan once during each four (4) year cycle.

(5) The reassessment of a group of parcels in a particular class of real property shall begin on May 1 of a year.

(6) The reassessment of parcels:

(A) must include a physical inspection of each parcel of real property in the group of parcels that is being reassessed; and

(B) shall be completed on or before January 1 of the year after the year in which the reassessment of the group of parcels begins.

(7) For real property included in a group of parcels that is reassessed, the reassessment is the basis for taxes payable in the year following the year in which the reassessment is to be completed.

(8) The reassessment plan must specify the dates by which the assessor must submit land values under section 13.6 of this chapter to the county [ptaboa].

(9) Subject to review and approval by the [DLGF], the county assessor may modify the reassessment plan.

(b) A county may submit a reassessment plan that provides for reassessing more than twenty-five percent (25%) of all parcels of real property in the county in a particular year. A plan may provide that all parcels are to be reassessed in one (1) year. However, a plan must cover a four (4) year period. All real property in each group of parcels shall be reassessed under the county's reassessment plan once during each reassessment cycle.

(c) The reassessment of the first group of parcels under a county's reassessment plan shall begin on July 1, 2014, and shall be completed on or before January 1, 2015.

(d) The [DLGF] may adopt rules to govern the reassessment of property under county reassessment plans.

IND. CODE § 6-1.1-4-4.2 (2018) (amended 2023).

## ANALYSIS

On appeal, Camelot argues that the Indiana Board erred in determining that its appeal was untimely. (*See* Pet'r Br. at 4-6.) As a result of this error, Camelot continues, the Indiana Board failed to address its argument that the Bartholomew County land order approved by the PTABOA in February of 2018 could not be used to value Camelot's land as of the January 1, 2018, assessment date. (*See* Pet'r Br. at 6-7; Oral Arg. Tr. at 5-6.)

9

## 1. Was Camelot's Appeal Timely Filed?

Camelot first argues on appeal that given the Indiana Supreme Court's decision in *Muir Woods Section One Association, Inc. v. O'Connor*, 172 N.E.3d 1205 (Ind. 2021), the Indiana Board erred in determining that Camelot's appeal was untimely filed. (*See* Pet'r Br. at 4-6.) Camelot is correct.

In *Muir Woods*, the Indiana Supreme Court evaluated whether the claim that an assessor failed to apply a certain base rate discount when calculating the assessed value of common area land was an objective error that could be raised under the now defunct Form 133 correction of error process. *See Muir Woods Section One Ass'n, Inc. v. O'Connor*, 172 N.E.3d 1205, 1206 (Ind. 2021). The Indiana Supreme Court explained that when the Form 133 appeal process was in use, it "could only be used to remedy 'errors which can be corrected without resort to subjective judgment and according to objective standards.'" *Id.* at 1207 (quoting *Muir Woods, Inc. v. O'Connor*, 36 N.E.3d 1208, 1213 (Ind. Tax Ct. 2015), *review denied*). The Indiana Supreme Court further explained that while an assessor's initial determination of a base rate was inherently subjective, the application of the discount factor as prescribed in the land order was not. *Id.* Consequently, the Indiana Supreme Court found that the use of the Form 133 correction of error process was proper because it was used to "challeng[e] the objective application of a prescribed discount rate to an already-determined base rate." *Id.* at 1208.

In this case, similar to the appeal in *Muir Woods*, the question presented for resolution involves an *objective* application of a land order. Indeed, during the administrative process, Camelot claimed its land assessment resulted from a "clerical,

10

mathematical, or typographical error" because the Assessor did not use the proper land order (and thus an improper base rate) to value its land for the 2018 assessment year. (*See, e.g.*, Cert. Admin. R. at 1-4, 86, 88, 90, 93-94.) The question whether the proper land order was used is not an inherently subjective one. *See, e.g.*, *Square 74 Assocs. LLC, v. Marion Cnty. Assessor*, 138 N.E.3d 336, 340 (Ind. Tax. Ct. 2019) (providing that objective errors are errors capable of correction without resort to subjective judgment); *Rinker Boat Co. v. State Bd. of Tax Comm'rs*, 722 N.E.2d 919, 922 (Ind. Tax Ct. 1999) (explaining that objective errors involve uncomplicated true or false findings of fact).

Classifying Camelot's appeal as one that challenges an objective error is critical due to the differing time limitations for appealing an objective error versus a subjective error. *See Square 74 Assocs.*, 138 N.E.3d at 340-46 (affirming the Indiana Board's dismissal of Form 133 correction of error appeals as untimely because they sought to correct subjective errors); *Pulte Homes of Indiana, LLC v. Hendricks Cnty. Assessor*, 42 N.E.3d 590, 593-96 (Ind. Tax Ct. 2015) (explaining that the Form 133 correction of error appeal procedure is reserved for the correction of objective errors only), *review denied*; *Hatcher v. State Bd. of Tax Comm'rs*, 561 N.E.2d 852, 853-58 (Ind. Tax Ct. 1990) (explaining that errors susceptible to correction under the Form 133 correction of error appeal procedure are objective errors, not errors that require subjective judgments). Prior to 2017, taxpayers could file a Form 133 correction of error appeal, taking advantage of its extended statute of limitations under Indiana Code § 6-1.1-15-12, to correct the following objective errors in assessments:

(1) The description of the real property was in error[;]

(2) The assessment was against the wrong person[;]

11

(3) Taxes on the same property were charged more than one (1) time in the same year[;]

(4) There was a mathematical error in computing the taxes or penalties on the taxes[;]

(5) There was an error in carrying delinquent taxes forward from one (1) tax duplicate to another[;]

(6) The taxes, as a matter of law, were illegal[;]

(7) There was a mathematical error in computing an assessment[; and]

(8)  Through an error or omission by any state or county officer, the taxpayer was not given:

    (A)  the proper credit under IC 6-1.1-20.6-7.5 for property taxes imposed for an assessment date after January 15, 2011;

    (B)  any other credit permitted by law;

    (C)  an exemption permitted by law; or

    (D)  a deduction permitted by law.

IND. CODE § 6-1.1-15-12(a) (2017) (repealed 2017).  *See also Hutcherson v. Ward*, 2 N.E.3d 138, 142 (Ind. Tax Ct. 2013) (explaining that as of 2013, the Form 133 correction of error appeal procedure was not restricted to a three-year time limitation given the repeal of 50 IAC 4.2-3-12).

In 2017, the Legislature passed Senate Enrolled Act No. 386, which revised the property assessment appeal process by (1) repealing Indiana Code § 6-1.1-15-1 that required the use of the former Form 130 to challenge subjective errors in assessments, (2) repealing Indiana Code § 6-1.1-15-12 that required the use of a Form 133 to challenge objective errors in assessments, (3) adopting Indiana Code § 6-1.1-15-1.1 that required the use of a single form to challenge both subjective and objective errors

12

in assessments (i.e., the revised Form 130), and (4) adding a three-year statute of limitations for filing a correction of error appeal. *See* IND. CODE § 6-1.1-15-1 (2017) (repealed 2017); I.C. § 6-1.1-15-12; IND. CODE § 6-1.1-15-1.1 (2017) (amended 2019); Pub. L. No. 232-2017. But in doing so, the Legislature did not eliminate the long-standing distinction between objective and subjective errors for purposes of the correction of error appeal procedure. Instead, as just mentioned, taxpayers now use just one form, the revised Form 130, to challenge both subjective errors in their assessments (under Section II "Reason for Appeal of Current Year's Assessment") and objective errors in their assessments (under Section III "Correction of Error Per IC 6-1.1-15-1.1(a) and (b)"). (*See, e.g.*, Cert. Admin. R. at 3-4.) For the most part, the objective errors enumerated in Indiana Code § 6-1.1-15-1.1(a)(2)-(6) are the same types of errors formerly listed under Indiana Code § 6-1.1-15-12. *Compare* I.C. § 6-1.1-15-1.1(a)(2)-(6) (describing what errors could be corrected under the revised Form 130 correction of error appeal procedure) *with* I.C. § 6-1.1-15-12(a) (describing what errors could be corrected under the Form 133 appeal procedure).

Camelot's appeal raised the objective error whether the Assessor used the proper land order (and thus the proper base rate) to determine the assessed value of its land. There is no dispute that Camelot's appeal was initiated using the revised Form 130 correction of error appeal procedure. (*See* Cert. Admin. R. at 3-4.) There is also no dispute that Camelot filed its appeal for a correction of error within three years of when the taxes on its 2018 assessment was first due. (*See* Cert. Admin. R. at 3-4, 82 ¶ 16.) Accordingly, the Indiana Board erred in finding that Camelot's appeal was not timely filed.

13

## 2. Was it Proper to Use the Land Values Submitted to the PTABOA on February 6, 2018, To Assess Camelot's Property for the 2018 Tax Year?

Because the Indiana Board found that Camelot's appeal was untimely, it did not address Camelot's claim that the Assessor used the wrong land order to value its land. (*See, e.g.*, Cert. Admin. R. at 82 ¶ 19 (explaining that Camelot "focused solely on an irrelevant question: whether the Assessor could apply base rates that the PTABOA did not approve until February 6, 2018[,] to assess Camelot's property for January 1, 2018").) Now, on appeal, Camelot asks the Court to resolve the issue.[4] (*See* Pet'r Br. at 7; Oral Arg. Tr. at 17-19, 30-31.)

Camelot argues that the land order that was approved by the PTABOA in February of 2018 could not be used to value its land as of the January 1, 2018, assessment date. (Pet'r Reply Br. at 2.) As support for its argument, Camelot points to the "before the land values become effective" language in Indiana Code § 6-1.1-4-13.6(b) as clearly indicating that the base rates set forth in a land order have an effective date and therefore can only be applied once they are, in fact, effective. (*See, e.g.*, Pet'r Br. at 7; Pet'r Reply Br. at 2-3; Oral Arg. Tr. at 22-24.) Acknowledging that the statute is silent as to when land values become effective, Camelot turns to the rule of statutory construction that instructs statutory language is generally given prospective

---

[4] The parties assert that it is proper for the Court to decide this issue as opposed to remanding it to the Indiana Board. (*See* Oral Arg. Tr. at 6-9, 30-31, 60-64, 69-70 (indicating that the parties agree that although the Indiana Board did not resolve the issue, it made the findings of fact necessary to resolve the issue).) The Court agrees. *See Cedar Lake Conf. Ass'n v. Lake Cnty. Prop. Tax Assessment Bd. of Appeals*, 887 N.E.2d 205, 207 (Ind. Tax Ct. 2008) (explaining that this Court defers to the Indiana Board's factual findings when they are supported by substantial evidence but reviews any questions of law that arise from the Indiana Board's factual findings *de novo*), *review denied*.

effect only. (*See* Pet'r Reply Br. at 4; Oral Arg. Tr. at 36-37.) Relying on this rule, Camelot concludes that because the PTABOA did not approve the land values at issue until February 6, 2018, those values could only be used to value land after that date and not before. (*See* Pet'r Reply Br. at 4; Oral Arg. Tr. at 36-37.) The Court does not find Camelot's argument persuasive for the following reasons.

First, to the extent Camelot has hinged its argument on the PTABOA's approval date of February 6, 2018, nothing in either Indiana Code § 6-1.1-4-13.6 or § 6-1.1-4-4.2 require the PTABOA to "approve" the values that were presented to it. *See* I.C. §§ 6-1.1-4-4.2, -13.6. Instead, all that was statutorily required was that the Assessor *submit* her land values to the PTABOA by the date specified in the county's reassessment plan that had been approved by the DLGF. *See* I.C. §§ 6-1.1-4-4.2(a)(8), -13.6(a). *See also DeKalb Cnty. E. Cmty. Sch. Dist. v. Dep't of Local Gov't Fin.*, 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010) (stating that when the language of a statute is clear and unambiguous, the meaning of statute may not be expanded or contracted by reading into it language that is not there). The evidence contained in the certified administrative record demonstrates that Bartholomew County's 2015-2018 reassessment plan, as approved by the DLGF, required the Assessor to submit her land values to the PTABOA "during the 4th year" of that reassessment cycle (*i.e.,* 2018). (*See, e.g.*, Cert. Admin. R. at 37-38, 42-43, 47-51.) Camelot acknowledges that the Assessor submitted her land values to the PTABOA in accordance with that reassessment plan. (*See* Pet'r Reply Br. at 3; Oral Arg. Tr. at 26.)

Second, the "before the land values become effective" language to which Camelot points comes into play only upon the assessing official's failure to submit land

values to a ptaboa by the deadline specified in the county's reassessment plan. *See* I.C. § 6-1.1-4-13.6(b). As just explained, however, that was not case here. *Supra*. Nonetheless, when reading that "effective" language within the context of the entire provision of which it is a part, the Legislature simply meant that if both the county assessor and the county ptaboa fail to determine the land values that are to be used in a particular assessment year, the DLGF shall step in and determine the values for them.[5] *See, e.g.*, *Crown Prop. Grp., LLC v. Indiana Dep't of State Revenue*, 135 N.E.3d 671, 677 (Ind. Tax Ct. 2019) (explaining that when statutory language is clear and unambiguous, it is the duty of this Court to give effect to the plain meaning of the

---

[5] To the extent Camelot has concluded that for purposes of the January 1, 2018, assessment, the county land order should have been submitted to the PTABOA *before* that date, (*see* Pet'r Br. at 7; Pet'r Reply Br. at 4; Oral Arg. Tr. at 24), its argument ignores the realities of how Indiana's assessment process works. Indeed, while Indiana's annual assessment date is January 1, *see* I.C. § 6-1.1-2-1.5(a)(2), that does not mean that assessments are actually completed and finalized *on* that date. For example, when formulating land values to be used in a given assessment year, assessing officials are to analyze and rely on data from sales transactions that have occurred *through and including December 31 of the previous year calendar year*. *See* 2011 REAL PROPERTY ASSESSMENT MANUAL ("2011 Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2011) (amended 2020)) at 2; 2021 REAL PROPERTY ASSESSMENT MANUAL ("2021 Manual") (incorporated by reference at 50 IND. ADMIN. CODE 2.4-1-2 (2020)) at 2. *See also Osolo Twp. v. Elkhart Maple Lane Assocs., L.P.*, 789 N.E.2d 109, 112 (Ind. Tax Ct. 2003) (explaining that Indiana's duly promulgated property assessment regulations have the force of law). Thus, it is not possible for assessing officials to analyze all applicable sales data, determine land values, submit them to the ptaboa, reassess overall assessment valuations using those land values, update corresponding record cards, and provide notice to taxpayers of changes to assessments between December 31 and January 2. Accordingly, as Camelot concedes, the process by which land values and land orders are determined and applied must be very fluid and "flexible." (*See* Oral Arg. Tr. at 66-67.) Indiana's Assessment Manual provides that flexibility by specifying that property assessments are to reflect a valuation "as of" the January 1st date. *See* 2011 Manual at 2. *See also Marion Cnty. Assessor v. Simon DeBartolo Grp., L.P.*, 52 N.E.3d 65, 69-70 (Ind. Tax Ct. 2016) (acknowledging that given Indiana's statutory tax system, "time-gaps" necessarily occur between the valuation, assessment, and appeal dates and deadlines). Here, Camelot has not presented any evidence demonstrating that its 2018 land assessment was computed using inappropriate land sales data.

statute; unambiguous statutes must be read to mean what they plainly express, and their plain meanings may not be enlarged or restricted).

Camelot has not demonstrated to the Court that Indiana Code §§ 6-1.1-4-4.2 and -13.6 prohibited the Assessor from using the Bartholomew County land order that was "approved" by the PTABOA in February of 2018 to value its land as of the January 1, 2018, assessment date. Accordingly, Camelot has not demonstrated that it is entitled to a change in its land assessment for that tax year.

**CONCLUSION**

For the foregoing reasons, the Court REVERSES the Indiana Board's determination that Camelot's appeal was not timely filed. Nonetheless, the Court AFFIRMS the Indiana Board's ultimate determination that Camelot is not entitled to a change in its 2018 land assessment.

17